# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 21, 2008

133620

RENIE MANZELLA and JOSEPH MANZELLA,
      Plaintiffs-Appellees,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
      Defendant-Appellant,

and

ISRAEL MALDONADO MORADO,
FERNANDO OJEDA MIRANDA, and
PROGRESSIVE MICHIGAN INSURANCE
COMPANY,
      Defendants.
_____/

SC: 133620
COA: 271365
Van Buren CC: 05-053501-NI

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

On January 9, 2008, the Court heard oral argument on the application for leave to appeal the January 4, 2007 judgment of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.302(G)(1). In lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals, for the reasons stated in the Court of Appeals dissenting opinion, and we REINSTATE the Van Buren Circuit Court's orders of March 27, 2006, and May 22, 2006, granting State Farm Mutual Automobile Insurance Company's motions for summary disposition.

CAVANAGH and KELLY, JJ., would deny leave to appeal.

WEAVER, J., dissents and states as follows:

I would deny leave to appeal and dissent from the peremptory order reversing the judgment of the Court of Appeals for the reasons stated in the Court of Appeals majority opinion, *Manzella v State Farm Mut Ins Automobile Ins Co,* unpublished opinion per curiam, decided January 4, 2007 (Docket No. 271365), as follows:

Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendant State Farm Mutual Automobile Insurance Company (hereafter defendant) with regard to plaintiffs' claim for uninsured motorist coverage. We reverse. This appeal is being decided without oral argument under MCR 7.214(E).

We review a grant of summary disposition de novo. *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 713; 706 NW2d 426 (2005). Also, because the essential facts of this case are undisputed, its resolution turns on interpretation of the relevant insurance policy. Interpretation of an insurance policy is likewise reviewed de novo. *Id*.

Because uninsured motorist coverage is not mandated by the no-fault act, the rights afforded by such coverage are purely contractual. *Rory v Continental Ins Co*, 473 Mich 457, 465-466; 703 NW2d 23 (2005). Contractual language is given its ordinary and plain meaning. *Royal Prop Group, supra* at 715. However, "an insurance contract should be read as a whole and meaning should be given to all terms." *Id*. Such a contract "must be construed so as to give effect to every word, clause, and phrase, and a construction should be avoided that would render any part of the contract surplusage or nugatory." *Id*.

This case arose out of an automobile accident on October 4, 2003. Apparently, plaintiff Renie Manzella was driving behind a vehicle driven by Israel Morado and owned by Fernando Miranda, neither of whom had automobile insurance for that vehicle. Morado drove his vehicle into the rear of another vehicle, and Renie drove into the rear of the Morado/Miranda vehicle. Defendant denied plaintiffs' claim for uninsured motorist coverage, and plaintiffs commenced this suit, alleging (1) claims against Morado and Miranda based on Morado's negligence in causing the accident, and (2) claims against defendant based on the allegation that it was obligated to provide uninsured motorist coverage. Defendant denied liability on the ground that Renie's own negligence was more than 50 percent the cause of the accident. The trial court granted summary disposition under MCR 2.116(C)(10) to defendant on that basis. The trial court also entered a default judgment against Morado and Miranda, neither of whom participated in the trial.

Plaintiffs argue that because of the default and default judgment, the language of the relevant uninsured motorist policy entitles them to coverage. Plaintiffs therefore contend that the trial court should never have reached the issue of whether Renie was actually more than 50 percent at fault for the accident.

The "uninsured motor vehicle" coverage portion of the relevant insurance policy includes the following language:

"We [defendant] will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.** The **bodily injury** must be sustained by an **insured** and caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle.** [Emphasis in original.]"

It is not disputed that Renie is an "insured" who suffered "bodily injury" as a result of an accident arising out of operation of an "uninsured motor vehicle." Moreover, the default judgment legally entitles plaintiffs to collect damages from the owner and driver of that uninsured motor vehicle based on the bodily injury. It therefore appears manifest that defendant must pay damages to plaintiffs in this case.

While conceding that the above language supports plaintiffs' position, defendant relies on another portion of the uninsured motor vehicle policy under a subheading titled, "Deciding Fault and Amount" provides:

"Two questions must be decided by agreement between the **insured** and us:

1. Is the **insured** legally entitled to collect damages from the owner or driver of the **uninsured motor vehicle;** and

2. If so, in what amount? [Emphasis in original.]"

This subheading then provides options "if there is no agreement." The first provides that the parties may consent to arbitration, which did not take place here. In the alternative, the insured shall file a lawsuit against the insurer (defendant) and the owner or operator of the uninsured motor vehicle, provide defendant with copies of the summons and complaint, and secure a judgment in that action. This is precisely what plaintiffs did.

Defendant points out that the contract provides that the judgment "must be the final result of an actual trial and an appeal, if an appeal is taken." Defendant argues that a default judgment, although a legal entitlement to damages, is not "the final result of an actual trial." We believe this is a tortured reading of the contract. When the contract is viewed as a whole, as it must be, it clearly refers to the distinction between litigation and settlement, rather than how the litigation proceeds to judgment. The contract explicitly, and in notably prominent type, precludes coverage in the event of a settlement without defendant's permission. Furthermore, a judgment obtained as a result of summary disposition would, by defendant's definition, not be "the final result of an actual trial." The more sensible and consistent interpretation is that the judgment discussed in the contract may not be a consent judgment or other

agreement between the parties, and it must be reasonably immune to being attacked or set aside. A default judgment is a final judgment, and it appears that the time limits within which to challenge it have long since past. See *Allied Electrical Supply Co, Inc v Tenaglia*, 461 Mich 285, 288-289; 602 NW2d 572 (1999). We are satisfied that this condition in the contract has been met.

Defendant also points out that that the contract explicitly reserves to defendant "the right to defend on the issues of the legal liability of and the damages owed by" the uninsured owner or driver, and further states that defendant is "not bound by any judgment against any person or organization obtained without [defendant's] written consent." We agree with defendant that this language does not impose an *obligation* to defend. However, defendant's construction, that it may ignore a judgment entered by a court simply because defendant did not consent to the judgment, also appears to be a tortured reading of the contract. Such a construction could create an inconceivable situation wherein defendant could defend the uninsured motorist unsuccessfully and then claim not to be bound by the resulting judgment. Moreover, it would render entirely nugatory the provisions for the insured filing suit against the uninsured owner or motorist and against defendant, in the event defendant and the insured fail to agree on the insured's legal entitlement to collect damages. Rather, when this language is read in context with the rest of the provisions, it enforces the procedure an insured must follow: namely, joining defendant to the suit. In other words, an insured could not simply file suit against the uninsured motorist only without joining defendant and providing to defendant a copy of the summons and complaint; doing so would deprive defendant of its contractual right to defend, and defendant therefore reasonably would not wish to be bound by such a judgment. Having been properly joined as a party, and having elected not to defend in this case, the language defendant relies on has no application here.

We note that plaintiffs discuss at some length dicta from *American Family Mut Ins Co v Petersen*, 679 NW2d 571 (Iowa, 2004). However, because our application of Michigan case law to the relevant contractual language is dispositive, we need not address this foreign authority.

Reversed.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 21, 2008

Clerk

p0318